UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x

In re PLATINUM-BEECHWOOD LITIGATION :          18-cv-6658 (JSR)

------------------------------------ x

SENIOR HEALTH INSURANCE COMPANY OF    :
PENNSYLVANIA,                         :          18-cv-6658 (JSR)
                                      :
        Plaintiff,                    :
                                      :
        -v-                           :
                                      :
BEECHWOOD RE LTD. et al.,             :
                                      :
        Defendants.                   :

------------------------------------ x

DAVID LEVY,                           :
                                      :          19-cv-3211 (JSR)
        Plaintiff,                    :
                                      :
        -v-                           :
                                      :
SENIOR HEALTH INSURANCE COMPANY OF    :
PENNSYLVANIA,                         :
                                      :
        Defendant.                    :

------------------------------------ x

B ASSET MANAGER, L.P. et al.,         :
                                      :          19-cv-4487 (JSR)
        Plaintiffs,                   :
                                      :          MEMORANDUM ORDER
        -v-                           :
                                      :
SENIOR HEALTH INSURANCE COMPANY OF    :
PENNSYLVANIA,                         :
                                      :
        Defendant.                    :

------------------------------------ x

┌─────────────────────────────┐
│ USDC SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #:_____          │
│ DATE FILED:  7/8/19          │
└─────────────────────────────┘

JED S. RAKOFF, U.S.D.J.

    In an Opinion and Order dated May 13, 2019, this Court

denied the motion of Beechwood Re Ltd. ("BRE"), B Asset Manager,

L.P. ("BAM"), Beechwood Bermuda International Ltd. ("BBIL"),

Beechwood Re Investments, LLC ("BRILLC"), Mark Feuer, Scott Taylor, and Dhruv Narain (collectively, the "Beechwood Parties") for summary judgment on their counterclaim against Senior Health Insurance Company of Pennsylvania ("SHIP") for the immediate advancement of litigation expenses. 18-cv-6658, ECF No. 392; 19-cv-3211, ECF No. 26. The Court also granted in part and denied in part David Levy's motion for a preliminary injunction against SHIP for the immediate advancement of litigation expenses.

Now before the Court are several submissions related to the Court's May 13 Opinion. First, the Beechwood Parties, Levy, and SHIP each move to clarify or reconsider the Court's Opinion in various respects. 18-cv-6658, ECF No. 429 (Beechwood Parties' motion); 19-cv-3211, ECF No. 27 (Levy's motion); 19-cv-3211, ECF No. 30 (SHIP's motion). Second, the Beechwood Parties – including B Asset Manager II, L.P. ("BAM II"), Beechwood Re Holdings, Inc. ("BRE Holdings"), and BAM Administrative Services LLC ("BAM Admin"), but excluding BRE - have filed a new action against SHIP and have moved for summary judgment on their claim for the immediate advancement of expenses incurred in third-party litigation. 19-cv-4487, ECF No. 13. And third, SHIP and Levy have made allocation submissions regarding the portion of Levy's expenses that each party believes is eligible for advancement. 19-cv-3211, ECF Nos. 28, 35, 37.

For the reasons below, the Court denies the motions for reconsideration of the Beechwood Parties, Levy, and SHIP, and it grants the Beechwood Parties' motion for summary judgment in the newly filed action. With respect to SHIP and Levy's allocation submissions, the Court holds that Levy is entitled to advancement of 5% of his expenses incurred in connection with the Schmidt action, 3% of his expenses incurred in connection with the SEC and criminal actions, and 2.5% of his expenses incurred in connection with the Trott action.

## Background

The relevant background to this case has been set forth in various Opinions and Orders of this Court, familiarity with which is here assumed. See In re Platinum-Beechwood Litig., No. 18-cv-6658 (JSR), 2019 WL 2093914, at *1 (S.D.N.Y. May 13, 2019); In re Platinum-Beechwood Litig., No. 18-cv-6658 (JSR), 2019 WL 1759925, at *1 (S.D.N.Y. Apr. 22, 2019); In re Platinum-Beechwood Litig., No. 18-cv-10936 (JSR), 2019 WL 1570808, at *2-7 (S.D.N.Y. Apr. 11, 2019); Senior Health Ins. Co. of Pennsylvania v. Beechwood Re Ltd., 345 F. Supp. 3d 515, 520-23 (S.D.N.Y. 2018).

On March 20, 2019, the Beechwood Parties filed an Answer to SHIP's Second Amended Complaint in which they asserted, inter alia, a counterclaim for advancement of expenses incurred in

connection with Senior Health Insurance Company of Pennsylvania v. Beechwood Re Ltd. et al., 18-cv-6658-JSR (S.D.N.Y.) (the "SHIP action"). See 18-cv-6658, ECF No. 190, at ¶¶ 266-69. On April 10, 2019, Levy filed a separate action against SHIP in which he asserted, inter alia, a claim for advancement of expenses incurred in connection with five separate actions, namely, the SHIP action, Trott et al. v. Platinum Management (NY) LLC et al., 18-cv-10936-JSR (S.D.N.Y.) (the "Trott action"), Schmidt v. Nordlicht et al., Case No. 2016-76291 (Dist. Ct., Harris Cty., Tex.) (the "Schmidt action"), United States v. Nordlicht et al., 16-cr-00640-BMC (E.D.N.Y.) (the "criminal action"), and SEC v. Platinum Management (NY) LLC et al., 16-cv-06848-BMC (E.D.N.Y.) (the "SEC action"). See 19-cv-3211, ECF No. 1, at ¶¶ 27-30.

The Beechwood Parties moved for summary judgment on their advancement counterclaim, 18-cv-6658, ECF No. 191, and Levy moved for a preliminary injunction on his advancement claim, 19-cv-3211, ECF No. 5. In an Opinion and Order dated May 13, 2019, the Court denied the Beechwood Parties' motion, and it granted in part and denied in part Levy's motion. See In re Platinum-Beechwood Litig., 2019 WL 2093914, at *1. Specifically, the Court held that neither the Beechwood Parties nor Levy was entitled to advancement of expenses incurred in the SHIP action.

4

Id. at *5. Because the Beechwood Parties sought advancement only in connection with the SHIP action, the Court denied their motion in its entirety.

The Court held, however, that Levy was entitled to advancement of expenses incurred in connection with the third-party actions to the extent that those expenses were incurred "by virtue of . . . his serving as an Indemnified Party" under the investment management agreements ("IMAs") that the Beechwood Parties executed with SHIP. Id. at *9. The Court then solicited, and the parties filed, allocation submissions regarding the portion of Levy's expenses that each party believed to be eligible for advancement. 19-cv-3211, ECF Nos. 28, 35, 37.

On May 16, following Levy's lead, the Beechwood Parties filed a separate action against SHIP in which they sought, inter alia, advancement for expenses incurred in connection with the Trott action, Cyganowski v. Beechwood Re Ltd. et al., 18-cv-12018-JSR (S.D.N.Y.) (the "Cyganowski action"), and Schmidt v. B Asset Manager LP et al., Case No. 15-34287, Adv. No. 17-3324 (Bankr. S.D. Tex.) (the "Black Elk action"). See 19-cv-4487, ECF No. 1. Shortly thereafter, the Beechwood Parties moved for summary judgment on their advancement claim. 19-cv-4487, ECF No. 13. SHIP opposes. 19-cv-4487, ECF No. 22.

In addition, on June 7, the Beechwood Parties moved for reconsideration of the portion of the Court's May 13 Opinion that held that they were not entitled to advancement of expenses incurred in connection with the SHIP action. 18-cv-6658, ECF No. 429. Levy filed a motion incorporating the Beechwood Parties' motion by reference. 19-cv-3211, ECF No. 27. And SHIP moved to clarify or reconsider the Court's Opinion in various respects relating to its disposition of Levy's preliminary injunction motion. ECF No. 30. SHIP opposed the motions for reconsideration filed by the Beechwood Parties and Levy, 18-cv-6658, ECF No. 489; 19-cv-3211, ECF No. 33, and Levy opposed SHIP's motion, 19-cv-3211, ECF No. 34.

## Analysis

### I. Motions for Reconsideration

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir.

1995).[1] This standard is intended to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Carolco Pictures Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988). Accordingly, "[a] motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013).

**A. The Beechwood Parties' and Levy's Motions**

In its May 13 Opinion, the Court held that the Beechwood Parties and Levy were not entitled to advancement of expenses incurred in connection with the SHIP action. In re Platinum-Beechwood Litig., 2019 WL 2093914, at *5-6. Specifically, the Court explained, "New York law . . . imposes a strong presumption against reading indemnification provisions to cover expenses incurred in litigation between the parties," id. at *3, and the Beechwood Parties failed to demonstrate that Paragraph

---

[1] Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

18 of the IMAs – under which they sought indemnification and advancement – rebutted that presumption, id. at *4.

In reaching this conclusion, the Court found relevant that "Paragraph 18(c) contains only broad language that does not unequivocally indicate that the parties intended to indemnify attorneys' fees in lawsuits between themselves." Id. "More importantly," the Court continued, "it is clear from the terms of Paragraph 18 that future third-party claims were possible at the time of the contract." Id. The Court also noted that other aspects of Paragraph 18's structure cut against interparty indemnification, as did certain "unusual" consequences that interparty indemnification would imply. Id. at *4-5.

The Beechwood Parties and Levy now move for reconsideration on the grounds that the Court misinterpreted the indemnification provisions in the IMAs. See Memorandum of Law in Support of the Beechwood Parties' Motion for Reconsideration ("Beechwood Mem."), 18-cv-6658, ECF No. 430. The focus of their motion is the text of Paragraph 18 and the relationship between 18(a) – which addresses liability between the parties - and 18(c) – which addresses indemnification. Id. at 2-7. In essence, the Beechwood Parties argue that 18(a) and 18(c) each have two subparts, the first of which addresses situations where the Beechwood Parties have acted in good faith, and the second of

which addresses situations where they have not. Id. at 3-5. The Beechwood Parties argue that the first subpart in 18(a) must be paired with the first subpart in 18(c), such that the two subparts provide a unified scheme addressing liability and indemnification in cases where the Beechwood Parties have acted in good faith. Id. at 4-5. Because it is undisputed that the first subpart in 18(a) governs liability for interparty claims, the Beechwood Parties conclude, the first subpart of 18(c) must govern indemnification for interparty claims. Id. at 5-6.[2]

Before addressing the merits of the Beechwood Parties' argument, the Court notes that the Beechwood Parties have identified no "controlling decisions or data that the court overlooked." Shrader, 70 F.3d at 257. Instead, the Beechwood

---

[2] The Beechwood Parties also argue that there is nothing "unusual" about a scheme in which one party advances the litigation expenses of another party, but in which the second party may be required later to return those expenses and indemnify the litigation expenses of the first party. See Beechwood Mem. 7-10. The Beechwood Parties argue, for example, that "[i]n every case where there is both inter-party indemnification and advancement . . . the possibility of the 'whipsaw' effect identified by the Court will be present and indeed hardwired into the agreement." Id. at 9. As SHIP notes in its opposition brief, however, the unusual nature of the "whipsaw" effect is simply another reason why New York courts – and this Court – are reluctant to interpret indemnification provisions as covering interparty claims in the first place. See Senior Health Insurance Company of Pennsylvania's Memorandum of Law in Opposition to the Beechwood Parties' and David Levy's Motions for Reconsideration 5, 18-cv-6658, ECF No. 489.

Parties have engaged in a straightforward effort to relitigate the Court's prior decision. Such an effort is almost always an inappropriate basis for a motion for reconsideration, and the Court would be justified in denying the Beechwood Parties' motion on this ground alone.

Even taking their argument on its own terms, however, the Beechwood Parties have failed to do more than offer one possible interpretation under which Paragraph 18 provides for indemnification of interparty claims. It is possible, as the Beechwood Parties suggest, that the purpose of Paragraph 18 was to categorize situations based on whether the Beechwood Parties acted in good faith, and to outline, in the respective subparts of 18(a) and 18(c), different sets of cohesive rules to govern these categories. It is also possible, however, that the situations governed by 18(a) and 18(c) are not coextensive. For example, the first subpart of 18(a) governs the Beechwood Parties' liability for losses incurred by SHIP, whereas the first subpart of 18(c) governs SHIP's obligations to indemnify losses incurred by the Beechwood Parties. It seems reasonable that the former provision, but not the latter, would cover interparty claims, particularly given that the latter, but not the former, contemplates third-party claims. Certainly, the conclusion that the latter provision covers interparty claims is

far from "inescapable," as the Beechwood Parties suggest.
Beechwood Mem. 5. And as this Court has explained, "[w]here a
provision is subject to a reasonable interpretation one way or
another, the agreement must be construed not to indemnify one
party's legal expenses in defending against another party's
claims." In re Platinum-Beechwood Litig., 2019 WL 2093914, at
*4.

Because the Beechwood Parties have failed to identify any
legal or factual material that the Court overlooked in its May
13 Opinion – and because the Beechwood Parties still have not
shown that the parties expressed their desire to indemnify
interparty claims with "unmistakable clarity," id. at *3 – the
Court hereby denies their motion for reconsideration. Because
Levy's motion simply incorporates the Beechwood Parties' motion
by reference, the Court hereby denies Levy's motion as well.

**B. SHIP's Motion**

Although the Court held that the Beechwood Parties and Levy
were not entitled to advancement in connection with the SHIP
action, the Court nevertheless concluded that Levy was entitled
to advancement in connection with the third-party actions to the
extent that his litigation expenses were incurred "by virtue
of . . . his serving as an Indemnified Party" under the IMAs. In
re Platinum-Beechwood Litig., 2019 WL 2093914, at *9. SHIP now

moves for clarification or reconsideration of this decision on
several grounds. See SHIP's Memorandum in Support of Its Motion
for Clarification or Partial Reconsideration of the Court's
Opinion and Order on Levy's Motion for Preliminary Injunction
("SHIP Mem."), 19-cv-3211, ECF No. 31.

First, SHIP argues that the Court erred in rejecting its
position that advancement can be made only "out of the assets of
the Account[s]" that the Beechwood Parties managed. See In re
Platinum-Beechwood Litig., 2019 WL 2093914, at *7 (concluding
that SHIP's "interpretation would allow SHIP to avoid its
advancement obligations simply by transferring assets out of its
accounts," and noting that "SHIP still places a significant
value on its remaining illiquid assets"). Next, SHIP seeks
reconsideration of the Court's holding that Levy is entitled to
advancement even of expenses incurred defending allegations that
would not be indemnifiable if proven. See id. at *6 (explaining
that SHIP's "position renders meaningless the requirement in
Paragraph 18 that Levy repay SHIP's advances if it is ultimately
determined . . . that indemnification for such expenses is not
permitted by law or authorized by the IMAs"). And finally, SHIP
moves for reconsideration of this Court's conclusion that the
balance of the equities favors Levy. See id. at *8 (reasoning

that "Levy stands to lose not only money, but also his liberty, while SHIP faces at most a monetary loss").

After reviewing the parties' submissions, the Court concludes that SHIP – like the Beechwood Parties and Levy above – has failed to "point to controlling decisions or data that the court overlooked," Shrader, 70 F.3d at 257, and is instead impermissibly seeking to relitigate the Court's prior decisions.

With respect to SHIP's first argument in particular – that any advancement obligations should be limited to the illiquid assets held in its custodial accounts – SHIP's motion is a paradigmatic example "of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Carolco, 700 F. Supp. at 170. In its opposition briefs to both the Beechwood Parties' summary judgment motion and Levy's preliminary injunction motion, SHIP spent a single paragraph (with no legal citations) arguing that its obligations were limited to the assets in its accounts. See 18-cv-6658, ECF No. 221, at 23-24; 19-cv-3211, ECF No. 18, at 19. Now, in its motion for reconsideration, SHIP spends five pages expanding its argument, citing new cases, and discussing previously unmentioned provisions in the IMAs. SHIP Mem. 6-10. This is exactly the kind of litigation tactic that is proscribed by the strict standard governing motions for reconsideration.

13

SHIP's second and third arguments fare no better. Even on
the merits – which, again, the Court need not reach – SHIP has
failed to show that Levy is not entitled to advancement of
expenses incurred in the third-party actions, or that the
balance of the equities does not weigh in Levy's favor. On the
former point, SHIP argues that the Court's holding would "impose
a duty to defend – or advance – in every instance, regardless of
whether the alleged conduct was clearly excluded from
indemnification." Id. at 12 (emphasis omitted). But this is
plainly incorrect, as the Court has already held that SHIP is
required neither to indemnify nor advance any expenses incurred
in connection with the SHIP action. Moreover, SHIP's attempt to
distinguish Empire Merchants, LLC v. Merinoff, No. 16-cv-9590
(JMF), 2018 WL 317848 (S.D.N.Y. Jan. 5, 2018), falls short. See
SHIP Mem. 13. The relevant point in Empire, as here, is a
logical one: if a provision contemplates the repayment of
advanced fees that are ultimately held not to be indemnifiable,
then the possibility that fees might not be indemnifiable does
not preclude a party's right to advancement. SHIP offers no
response to this basic point.

Moving to the balance of the equities, the Court's
conclusion is unchanged by the additional arguments in SHIP's
motion for reconsideration. See id. at 14-16. While SHIP's

14

deteriorating financial position is unfortunate, advancing
Levy's expenses would nevertheless do far more to benefit him
than it would to harm SHIP. Moreover, SHIP's contention that
Levy is entitled "at most, [to] a very small fraction of his
overall defense costs," id. at 14, is a double-edged sword, as
it effectively concedes that advancement would exact a de
minimis toll on SHIP. At bottom, the injury that Levy faces is
serious, see In re Platinum-Beechwood Litig., 2019 WL 2093914,
at *8, whereas the potential costs to SHIP are relatively small.

For the foregoing reasons, the Court holds that SHIP has
failed to meet the high burden imposed on motions for
reconsideration. Accordingly, SHIP's motion is denied.

## II.  The Beechwood Parties' Motion for Summary Judgment

Under the Federal Rules of Civil Procedure, summary
judgment is appropriate "if the movant shows that there is no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
"The movant bears the burden of demonstrating the absence of a
genuine dispute of fact, and, to award summary judgment, the
court must be able to find after drawing all reasonable
inferences in favor of a non-movant that no reasonable trier of
fact could find in favor of that party." Palmer/Kane LLC v.
Rosen Book Works LLC, 204 F. Supp. 3d 565, 568 (S.D.N.Y. 2016).

Shortly after this Court issued its May 13 Opinion, the Beechwood Parties - including BAM II, BRE Holdings, and BAM Admin, but excluding BRE - filed a new action against SHIP and moved for summary judgment on their claim for the immediate advancement of expenses incurred in third-party litigation. 19-cv-4487, ECF No. 13. SHIP opposes, raising many of the arguments discussed above and in this Court's May 13 Opinion, along with some new arguments as to why the Beechwood Parties' motion should be denied. See Senior Health Insurance Company of Pennsylvania's Memorandum of Law in Opposition to the Beechwood Parties' Motion for Partial Summary Judgment ("SHIP Opp."), 19-cv-4487, ECF No. 22.

Beginning with the new arguments, SHIP gives several reasons why the Beechwood Parties are procedurally barred from bringing the instant advancement claim. See id. at 10-13. First, SHIP contends, the Beechwood Parties' advancement claim is a compulsory counterclaim that should have been brought in the SHIP action. Id. at 10-12. Second, SHIP argues that the new action filed by the Beechwood Parties is an impermissible end run around the SHIP action's scheduling order, which set a

deadline of March 29, 2019 for the joinder of additional parties and amendment of pleadings without leave. Id. at 12-13.[3]

The Court does not find either of these arguments to be persuasive. First, the Court holds that the Beechwood Parties' advancement claim is not a compulsory counterclaim. To begin with, the advancement claim does not "arise[] out of the transaction or occurrence that is the subject matter of" the claims in the SHIP action, Fed. R. Civ. P. 13(a)(1)(A), because there is no "logical relationship" between the two sets of claims, Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 (2d Cir. 2004).[4] Furthermore, counterclaims are compulsory only if

---

[3] SHIP also argues – as it did when opposing the Beechwood Parties' last motion for summary judgment and Levy's preliminary injunction motion – that the Beechwood Parties have waived any right to advancement. SHIP Opp. 13; see 18-cv-6658, ECF No. 221, at 24-25; 19-cv-3211, ECF No. 18, at 22-23. The Court previously rejected this argument, see In re Platinum-Beechwood Litig., 2019 WL 2093914, at *8 n.4, and it does so again here.

[4] See Int'l Airport Centers, L.L.C. v. Citrin, 455 F.3d 749, 751 (7th Cir. 2006) ("[S]ince entitlement to advancement is independent of the merits of the suit for which the money is sought, the claim for advancement is not a compulsory counterclaim to that suit."); Yukos Capital S.A.R.L. v. Feldman, No. 15-cv-4964-(LAK), 2016 WL 183360, at *3 (S.D.N.Y. Jan. 11, 2016) (rejecting defendant's "contention that his indemnification-advancement claim . . . is a compulsory counterclaim in this action"); Katzman v. Helen of Troy Texas Corp., No. 12 Civ. 4220 (PAE), 2012 WL 3831745, at *2 (S.D.N.Y. Aug. 28, 2012) (holding that "the issue presented by plaintiff's Complaint . . . is fundamentally distinct from the issue presented by defendants' counterclaims" for indemnification).

they have matured "at the time of [a pleading's] service," Fed. R. Civ. P. 13(a)(1),[5] and, as the Beechwood Parties explain, their advancement claim did not mature until after they filed their counterclaims in the SHIP action. See Reply Memorandum of Law in Support of the Beechwood Parties' Motion for Partial Summary Judgment for Advancement of Litigation Expenses in Third-Party Actions 2 ("Beechwood Reply"), 19-cv-4487, ECF No. 27.

Second, the Court holds that the Beechwood Parties have not made an impermissible end run around the scheduling order. As just noted, the Beechwood Parties' advancement claim is not a compulsory counterclaim, and the Beechwood Parties were not required to bring the claim in the SHIP action at all. Moreover, the claim did not mature until after the scheduling order's March 29 deadline for amended pleadings and the joinder of additional parties relating to the prior pleadings. See id. at 3.

Moving beyond these procedural arguments, SHIP offers several new reasons why the Beechwood Parties' motion should be denied. See SHIP Opp. 14-16, 20-21. First, SHIP argues that this

---

[5] See 6 Charles Alan Wright et al., Federal Practice and Procedure § 1411 (3d ed. 2019) ("The first exception [to Rule 13(a)] is that the party need not assert a counterclaim that has not matured at the time the party serves a pleading.").

Court should deny advancement as to BAM II, BRE Holdings, and BAM Admin because the Beechwood Parties have failed to "identif[y] a single act or statement by [those parties] whatsoever, let alone an act, statement, or omission by any of those parties in connection with the IMAs." Id. at 14. Second, SHIP contends, the Beechwood Parties materially breached the IMAs by failing to provide SHIP with the 5.85% return guaranteed by the IMAs, and SHIP's advancement obligations are therefore excused. Id. at 15-16. And finally, SHIP argues, the Beechwood Parties' motion should be denied "[b]ecause numerous disputes of material fact exist relating to the Beechwood Parties' actions and whether those actions fit within the scope of the IMAs' indemnification provision." Id. at 21.

As above, the Court is unpersuaded by SHIP's arguments. Beginning with its contention that the Court should deny advancement as to BAM II, BRE Holdings, and BAM Admin, SHIP confuses these parties' right to advancement with the amount of advancement that they are owed. Paragraph 18(a) of the IMAs states clearly that "affiliates" of the Beechwood signatories are "Indemnified Parties," and SHIP does not dispute that BAM II, BRE Holdings, and BAM Admin are affiliates of the Beechwood signatories. See 19-cv-4487, ECF No. 23, at ¶ 18. It is true that each of these parties – like Levy – is entitled to

advancement only of those fees incurred "by virtue of its . . .

serving as an Indemnified Party." In re Platinum-Beechwood

Litig., 2019 WL 2093914, at *7. And it is possible that the

amount of advancement will be small if the Court ultimately

determines that these parties took no meaningful action in

connection with their roles under the IMAs. But this is a

question to be resolved in allocation submissions like those

discussed below, not by the instant motion for summary judgment.[6]

The Court is also unpersuaded by SHIP's argument that

advancement should be denied because the Beechwood Parties have

materially breached the IMAs. See SHIP Opp. 15-16. As the

Beechwood Parties note, this argument appears to be foreclosed

by Paragraph 17(a) of the IMAs, which states that the parties'

indemnity obligations will survive termination of the IMAs, even

if the IMAs are terminated because of the Beechwood Parties'

failure to make guaranteed payments. See Beechwood Reply 4-5.

Furthermore, SHIP's argument merely rehashes its position, which

this Court has already rejected, that the Beechwood Parties are

not entitled to advancement because they are alleged to have

_____

[6] For similar reasons, the Court will not deny summary judgment
based on SHIP's contention that "numerous disputes of material
fact exist relating to the Beechwood Parties' actions and
whether those actions fit within the scope of the IMAs'
indemnification provision." SHIP Opp. 21. Instead, these
disputes are best addressed through allocation submissions.

engaged in non-indemnifiable misconduct. The Court again rejects that position here. If the Beechwood Parties are ultimately found to have materially violated the IMAs, then they will not be entitled to indemnification. Until then, the possibility of such a finding does not bar them from seeking advancement.

Having dispensed with SHIP's new arguments, the Court briefly turns to the arguments that it has already addressed above and in its May 13 Opinion. SHIP argues, as it has previously, that "[t]he Beechwood Parties are not entitled to summary judgment on their claims for third-party advancement because the claims at issue are not indemnifiable under the IMAs." SHIP Opp. 16. SHIP also contends that the Beechwood Parties are not entitled to indemnification or advancement because "[t]he allegations in each of the Legal Proceedings for which the Beechwood Parties seek advancement are all based on conduct that constitutes fraud, gross negligence or willful misconduct." Id. at 18 (quotations omitted). And to the extent that the Beechwood Parties are entitled to advancement, SHIP argues (again) that advancement must be limited to the illiquid assets held in SHIP's custodial accounts. Id. at 21-25.

As should be clear at this point, the Court has already considered and rejected these arguments, and it does so again here. Accordingly, the Court holds that the Beechwood Parties

21

are entitled to advancement under the IMAs, and it hereby grants their motion for summary judgment. In granting this motion, the Court makes no determination as to the amount of advancement that the Beechwood Parties are owed. Instead, SHIP will have a full opportunity – as it has in its litigation with Levy – to present arguments regarding the extent to which each Beechwood Party's litigation expenses have been incurred "by virtue of its . . . serving as an Indemnified Party."

As in the litigation between SHIP and Levy, the parties are directed to confer and determine in the first instance what portion of the Beechwood Parties' expenses are eligible for advancement. The Court hopes that the discussion below will provide a framework for the parties' negotiations, and that the parties will be able to resolve any disputes without returning to this Court. If the parties do reach a mutually agreeable resolution, they should so notify the Court in writing. If, however, the parties are unable to reach a resolution within 10 days from the date hereof, they should convene a joint conference call to chambers to discuss the matter further.

## III.   SHIP and Levy's Allocation Submissions

As noted, the Court held in its May 13 Opinion that Levy was entitled to advancement of his third-party litigation expenses to the extent that those expenses were incurred "by

virtue of . . . his serving as an Indemnified Party" under the IMAs. In re Platinum-Beechwood Litig., 2019 WL 2093914, at *7. The Court clarified that "Levy is entitled to advancement only of expenses incurred in connection with allegations about his role as a Beechwood officer," and it explained that "even then, Levy can recover only a subset of those expenses, as his general role as a Beechwood officer swept more broadly than his specific role as SHIP'S investment manager." Id. The Court left it to parties, however, "to try to determine in the first instance what portion of Levy's expenses are eligible for advancement." Id.

The parties failed to reach an agreement, and the Court directed them to submit written proposals regarding their respective allocation positions. See Defendant Senior Health Insurance Company of Pennsylvania's Memorandum of Law in Support of Its Position on Allocation ("SHIP Allocation Mem."), 19-cv-3211, ECF No. 28; Memorandum of Law in Support of Plaintiff David Levy's Position on Advancement and Allocation and in Opposition to Defendants' Position ("Levy Allocation Mem."), 19-cv-3211, ECF No. 35. After reviewing the parties' proposals, the Court can see why consensus eluded them; SHIP argues that roughly 0% of Levy's expenses are advanceable, see SHIP Allocation Mem. 28, while Levy argues that the number is closer

to 50% or 100%, depending on the third-party action, see Levy Allocation Mem. 22-23.

The divergence in the parties' proposals stems from two major disagreements: First, the parties disagree about Levy's entitlement to advancement in connection with claims relating to the Black Elk Scheme and investments in Northstar and other Platinum-related entities. Levy argues that SHIP must advance "all expenses and fees he has incurred in connection with his defense of the Black Elk Claims or that relate to SHIP's PPVA or Northstar-related investments." Id. at 25. SHIP, on the other hand, argues that Levy is not entitled to any advancement with respect to either set of claims. See Defendant Senior Health Insurance Company of Pennsylvania's Reply Memorandum in Further Support of Its Position on Allocation and in Opposition to David Levy's Position on Allocation 5-8 ("SHIP Allocation Reply"), 19-cv-3211, ECF No. 37.

Second, the parties disagree about the portion of Levy's expenses that are attributable to the above claims, as compared with the portion of Levy's expenses that are attributable to other allegations, such as those relating to his misconduct as a Platinum officer. Put another way, even assuming that Levy is entitled to advancement of some percentage of expenses relating to the Black Elk Scheme, Northstar, and other Platinum-related

investments, the parties disagree about how this percentage translates into an overall advancement obligation in each of the third-party actions.

The parties do, however, agree in several significant respects. To begin with, the parties agree that the overall advancement obligation is greatest in the Schmidt action, where the allegations focus almost entirely on the Black Elk Scheme and Northstar investments. See Schmidt Compl., 19-cv-3211, ECF No. 29, Ex. 6. The parties also agree that the overall obligation is smallest in the Trott action, where the bulk of the allegations against Levy concern his role as a Platinum officer. See Trott Compl., 19-cv-3211, ECF No. 29, Ex. 7. And the parties agree that the overall obligations are roughly the same in the SEC and criminal actions and that these obligations fall between the obligations in the Schmidt and Trott actions, but closer to the obligation in the Trott action.

When it comes to translating these relative obligations into absolute percentages, however, the parties offer radically different estimates. Levy argues that he is entitled to advancement of 100% of expenses incurred in connection with the Schmidt action, 65% of expenses incurred in connection with the criminal and SEC actions, and 50% of expenses incurred in connection with the Trott action. See Levy Allocation Mem. 22-

23. SHIP, by contrast, argues that Levy is entitled (at most) to advancement of 0.169% of expenses incurred in connection with the Schmidt action, 0.093% and 0.092% of expenses incurred in connection with the criminal and SEC actions, respectively, and 0.081% of expenses incurred in connection with the Trott action. See SHIP Allocation Mem. 28.

In resolving the parties' disputes, the Court looks primarily to the pleadings in the third-party actions. Cf. Freeman Family LLC v. Park Ave. Landing LLC, C.A. No. 2018-0683-TMR, 2019 WL 1966808, at *3 (Del. Ch. Apr. 30, 2019) ("Advancement cases are particularly appropriate for resolution on a paper record, as they principally involve the question of whether claims pled in a complaint against a party trigger a right to advancement under the terms of a corporate instrument."). The parties agree that advancement is warranted where "there is a nexus or causal connection between any of the underlying proceedings . . . and [Levy's] official corporate capacity." Homestore, Inc. v. Tafeen, 888 A.2d 204, 214 (Del. 2005). And a nexus "is established if [Levy's] corporate powers were used or necessary for the commission of the alleged misconduct." Bernstein v. TractManager, Inc., 953 A.2d 1003, 1011 (Del. Ch. 2007).

Moreover, "[t]o determine whether expenses incurred defending both covered and non-covered proceedings are subject to advancement, the operative test is: Would the disputed expenses have been incurred in defense of the covered proceeding even if there was no non-covered proceeding? If the answer is yes, then the disputed expenses are advanceable." Weil v. VEREIT Operating P'ship, C.A. No. 2017-0613-JTL, 2018 WL 834428, at *7 (Del. Ch. Feb. 13, 2018). The same logic applies to expenses incurred in connection with both advanceable and non-advanceable claims: if "work is useful for both types of claims, that work is entirely advanceable if it would have been done independently of the existence of the non-advanceable claims." Mooney v. Echo Therapeutics, Inc., C.A. No. 10054-VCP, 2015 WL 3413272, at *6 (Del. Ch. May 28, 2015). If the work would not have been done independently of the non-advanceable claims, however, it is not advanceable.

Applying these rules to the claims at issue, the Court begins briefly with claims relating to investments in Northstar and other Platinum-related entities. Here, the Court concludes that no advancement is warranted. Although the third-party actions allege that SHIP's assets were invested in these entities, there is no indication that Levy's role as SHIP's investment manager was necessary to any subsequent misconduct,

all of which appears to be attributable to Platinum. Accordingly, Levy has failed to establish the "nexus" required for entitlement to advancement. <u>Homestore</u>, 888 A.2d at 214.

Moving to the Black Elk Scheme, however, the Court concludes that Levy is entitled to at least some advancement. The pleadings in the third-party actions describe the Scheme as follows: As early as 2011, Levy and others "began devising a scheme to bypass [Black Elk] Bondholders' rights and misappropriate proceeds of Black Elk's asset sales for Platinum's benefit through deceptive means." Indictment ¶ 75, 19-cv-3211, ECF No. 29, Ex. 4. In a November 2011 email, for example, Mark Nordlicht wrote to Levy and others about ways of changing covenants in the bonds, including by "get[ting] them in friendly hands if the covenants are going to be an obstacle." <u>Id.</u>

By late 2013, Black Elk was "effectively insolvent," and Levy and others "pursued opportunities to sell Black Elk's assets while simultaneously pursuing a fraudulent strategy to divert the proceeds from any such asset sale to the Preferred Equity, which was controlled by Platinum, instead of the Bondholders." <u>Id.</u> ¶ 77. In early 2014, Levy and others caused Platinum to buy up Black Elk bonds "to control the asset sale process and overcome Platinum's concerns that the Bondholders

might intervene and take control of the proceeds when Black Elk, at Platinum's behest, sold Black Elk's most valuable assets." Id. ¶ 78. They then spent several months transferring Black Elk bonds to ostensibly independent entities that would later vote to amend the indenture governing the bonds – as contemplated by Nordlicht's November 2011 email – to allow asset sale proceeds to go to the Preferred Equity.

Multiple transfers of Black Elk bonds allegedly took place before the IMAs were signed. For example, Levy and others allegedly transferred bonds to the BEOF Funds in March 2014 in exchange for Preferred Equity, Trott Compl. ¶¶ 480-81, and they allegedly caused Beechwood to buy Black Elk bonds in early May 2014, id. ¶ 487. Other transfers allegedly took place after the IMAs were signed, although it is not clear from the pleadings what percentage of those transfers involved SHIP's funds. Levy argues that "at least $16.9 million of SHIP funds . . . were placed, through BBIL, in bonds issued by Black Elk," Levy Allocation Mem. 6, and this number is supported by the allegation in the criminal action that BBIL held $16,987,000 of Black Elk bonds as of July 2, 2014, Indictment ¶ 82. Even so, this amount is a fraction of the approximately $80 million of bonds that Levy and others had transferred to ostensibly independent entities by July of 2014. Id.

On July 16, 2014, Levy and others allegedly caused Black Elk to announce a Consent Solicitation that, inter alia, solicited Black Elk bondholders' votes to amend the bond indenture to allow asset sale proceeds to go to the Preferred Equity. Id. ¶ 83. Significantly, the Consent Solicitation falsely stated that PPVA and its affiliates owned only $18 million of bonds, when they in fact owned $98 million of bonds. Id. ¶ 84. Levy and others allegedly caused the ostensibly independent entities – including BBIL, but also including PPCO, PPLO, and BAM – to vote to amend the indenture, and the amendment passed, with holders of over $110 million of bonds voting in favor. Id. ¶ 85. With the amendment passed, Levy and others caused Black Elk to wire asset sale proceeds to the Preferred Equity holders, rather than to the bondholders. Id. ¶ 86; Trott Compl. ¶¶ 502-03.

Levy acknowledges that the above description "contain[s] allegations relating to the Black Elk Scheme that predate the IMAs," and he concedes "that other parties' funds were used to purchase Black Elk bonds in addition to SHIP's." Levy Allocation Mem. 17. Levy nevertheless argues that he is entitled to advancement for all expenses incurred in connection with allegations relating to Black Elk because he "would be forced to defend against those allegations in any event as inextricably

intertwined with the allegations regarding the use of funds (including SHIP's) to purchase and vote Black Elk bonds – the very 'lynchpin' of the alleged scheme." Id. Levy also contends that "the core of the alleged Black Elk Scheme misconduct is that Beechwood entities, including using SHIP funds, made purchases of Black Elk bonds." Id.

The Court disagrees with Levy, and it finds his position plainly inconsistent with the Court's prior holding that Levy can seek advancement only in connection with "his specific role as SHIP'S investment manager." In re Platinum-Beechwood Litig., 2019 WL 2093914, at *7. To be sure, Levy is alleged to have invested some of SHIP's assets in Black Elk bonds, and he is alleged to have voted those bonds in favor of amendment. Moreover, the Court agrees with Levy that the appropriate inquiry is whether the expenses he incurs in connection with the Black Elk claims "would have been [incurred] independently of the existence of" claims targeting his role as a Platinum officer, or his general role as a Beechwood officer. Mooney, 2015 WL 3413272, at *6.

The Court finds it utterly implausible, however, that Levy would have incurred the same amount of legal expenses in connection with the Black Elk Scheme if he were not alleged to have: (1) planned the scheme beginning in 2011; (2) started

transferring bonds to friendly entities prior to the execution of the IMAs; (3) transferred bonds to entities unrelated to SHIP after the execution of the IMAs; (4) caused Black Elk to issue the deceptive Consent Solicitation that led to the amendment of the indenture; and (5) caused tens of millions of dollars' worth of non-SHIP-held bonds to vote in favor of amendment. Indeed, when one reviews Levy's alleged misconduct in its totality – and the amount of that misconduct that was entirely independent of his role as SHIP's investment manager – it is difficult to take seriously Levy's characterization that "the crux of [the Black Elk Scheme] alleges that Mr. Levy, while he was CIO of Beechwood, improperly directed the investment of SHIP's funds in Black Elk bonds, and then improperly directed that SHIP's Black Elk bond holdings vote in favor of an amendment to the note indenture." Levy Allocation Mem. 2.

Instead, after reviewing the allegations against Levy in the third-party actions, the Court concludes that the vast majority of expenses incurred in connection with the Black Elk Scheme would not have been incurred if the allegations had targeted only Levy's specific role as SHIP's investment manager. Although allocation estimates are necessarily difficult to quantify, the Court's considered view is that Levy is entitled

to advancement of 5% of expenses incurred in connection with the Black Elk Scheme.

Having determined the amount of advancement to which Levy is entitled in connection with the Black Elk Scheme, the Court concludes by translating this amount into an overall advancement obligation in each of the third-party actions. Here the Court more or less adopts the framework set forth in Levy's submission. See id. at 22-23. First, the Court agrees that essentially all of Levy's expenses in the Schmidt action are incurred as a result of claims relating to Black Elk. As such, because Levy is entitled to advancement of 5% of expenses incurred in connection with Black Elk, the Court concludes that he is entitled to advancement of 5% of expenses incurred in connection with the Schmidt action. Next, the Court agrees with Levy – and SHIP – that SHIP's advancement obligation in the Trott action is roughly half of its obligation in the Schmidt action, and that its obligations in the SEC and criminal actions fall in between its obligations in the Trott and Schmidt actions, but closer to its obligation in the Trott action. Specifically, after reviewing the pleadings in each of the third-party actions, the Court concludes that Levy is entitled to advancement of 3% of his expenses in the SEC and criminal actions, and 2.5% of his expenses in the Trott action.

**Conclusion**

In sum, the Court denies the motions for reconsideration of the Beechwood Parties, Levy, and SHIP, and it grants the Beechwood Parties' motion for summary judgment in the newly filed action. With respect to SHIP and Levy's allocation proposals, the Court holds that Levy is entitled to advancement of 5% of his expenses in the Schmidt action, 3% of his expenses in the SEC and criminal actions, and 2.5% of his expenses in the Trott action. These payments should be made within 10 days of the date of this Memorandum Order, and, if there is any disagreement as to the exact dollar amounts, counsel for the relevant parties should bring these disputes to the Court by a joint telephone call no later than one week from the date of this Memorandum Order.

The Clerk is directed to close the entries at docket number 429 in 18-cv-6658, docket numbers 27 and 30 in 19-cv-3211, and docket number 13 in 19-cv-4487.

SO ORDERED.

Dated:  New York, NY
        July 8, 2019                    JED S. RAKOFF, U.S.D.J.